UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JEROME STALLONE,

                       Petitioner,

           -against-

MARILYN KOPP,

                       Respondent.

-------------------------------------------------------------X

**FILED**
**CLERK**

12/12/2024 2:54 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM AND ORDER**
23-CV-7865 (GRB)

**GARY R. BROWN, United States District Judge:**

      Petitioner Jerome Stallone ("Petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging a conviction and sentence for robbery in the first degree and burglary in the second degree in the County Court, County of Suffolk (the "trial court"). On this petition, Petitioner raises several claims as follows:

- Prosecutorial misconduct in the grand jury proceedings

- Ineffective assistance of the subsequently disbarred defense counsel

- Purported denial of the constitutional right to testify at trial

- Alleged *Batson* violations and racial discrimination during jury selection

Because each of these claims is procedurally barred and/or substantively without merit, and because none represent a procedure or decision that was contrary to, or an unreasonable application of, clearly established federal law, the petition is denied.

      ***Background***

      A review of the petition, filings by the Respondent, and the state court record[1] reveals

---

[1] The trial of *People v. Jerome Stallone* took place from May 21 through June 15, 2018. The jury selection took place on May 21-23, 2018, of which May 21 and May 22-23 are separately paginated transcripts of the jury selection minutes referenced herein together as "J. Tr." (DE 9-12, ECF pp. 1-455.) The transcripts of the trial from May 31 through June 15, 2018, are paginated throughout and referenced herein as "Trial Tr." (DE 9-12, ECF pp. 464-1230.)

that Petitioner was convicted by a jury after trial, during which trial, the prosecution introduced evidence identifying Petitioner as a person who, on November 28, 2016, burglarized and robbed a jewelry store in Southampton, Suffolk County.

The jury selection took place over the course of multiple days; neither party made any *Batson* challenges nor was there any on-the-record mention of any of the prospective jurors' race. (J. Tr.) At trial, while the prosecution was unable to present any conclusive forensic evidence linking Petitioner to the robbery/burglary of the jewelry store—a point extensively addressed by the defense counsel—multiple witnesses testified and identified Petitioner as the perpetrator. Notably, Petitioner's former parole officer testified that she knew Petitioner from having regularly met him in the months before November 2016 and later identified him from the "wanted" flyers as the person sought in connection with the jewelry store robbery.[2] (Trial Tr. 202-17.) The robbed store's owner and her two employees, who all were in the store at the time of the robbery, identified Petitioner in court as the person who, on November 28, 2016, entered the store. (Trial Tr. 133-35, 189, 421.) The owner also described being threatened by Petitioner who, while in close proximity to her, used a hammer to smash a display window and extract $23,000 worth of jewelry. (Trial Tr. 418-19, 420-21, 424.) She testified that she believed the Petitioner would hit her with the hammer, an experience she found frightening and traumatizing. (Trial Tr. 420-21, 424, 426, 450.) The defense counsel extensively cross-examined the store owner regarding the fact that, in her initial statements to law enforcement, she did not mention this threat. (Trial Tr. 426-45.) The People also presented testimony from a medical assistant familiar with the fact that Petitioner had a full hip replacement surgery on October 31, 2016.

---

[2] The parole officer testified without identifying herself as such or indicating how exactly she knew Petitioner; instead, she described how often she met Petitioner, how well she knew him, and how she recognized him from the distributed "wanted" flyers. (Trial Tr. 3-7, 202-17.)

(Trial Tr. 386-87.)  She testified to witnessing Petitioner riding his bicycle to his post-surgery appointment on November 16, 2016.  (Trial Tr. 386-87, 396.)

As part of the defense case, Petitioner challenged the value of the in-court identification by presenting an expert witness who testified about the challenges associated with memory reconstruction and various identification procedures.  (Trial Tr. 479-559.)  Though offered the opportunity, Petitioner decided not to testify:

> THE COURT: Mr. Stallone, you do not wish to testify in this case?
>
> THE DEFENDANT: I don't want to testify.

(Trial Tr. 541.)  After defense rested, (Trial Tr. 560), the People presented their rebuttal witness—the investigating detective—who described the procedures by which the store owner and her two employees made their prior identifications of Petitioner from the photo spreads presented to them at the police station in the months after the robbery.  (Trial Tr. 561-66.)  After both sides rested, (Trial Tr. 589), Petitioner requested that the defense counsel read Petitioner's statement in the record.  (Trial Tr. 596.)  In sum, Petitioner sought to argue to the jury that the prosecutor "suborned perjury" from the medical assistant regarding her having seen him riding a bicycle on November 16, 2016, two weeks after his hip replacement surgery.  (Trial Tr. 597.) Petitioner insisted that his grand jury testimony, including the exhibits—his medical records, also admitted in evidence at trial, (Trial Tr. 559-60)—painted a different picture, and he could not have been riding the bicycle on the day in question.  (Trial Tr. 597.)  After the trial court, outside of the jury presence, heard from the defense counsel and Petitioner, (Trial Tr. 596-602), the defense counsel told the court that he was ready to give closing arguments, adding, "now my client is mentioning about testifying himself, but the case is over and now we're into closing

arguments." (Trial Tr. 597-98.)  Nevertheless, Petitioner continued reiterating his claim that the prosecutor had elicited perjury from the medical assistant:

> THE DEFENDANT: . . . I went to the facility by van. I was placed in a medical van by a wheelchair and brought to the facility by the people at the facility with one of their nurses as an escort.
> The woman who testified in this court said that she saw me riding a bicycle at that facility. And it's a major issue because that's the only thing that alleges that I rode a bicycle. If anything was to be taken from that time, it's that I was not in a condition to ride a bicycle. That's my biggest concern.
> I did not go there by bicycle. I was taken by van from a facility where I was recovering from hip replacements, taken by van by one of their escorts.
>
> THE COURT: Okay.
> Sit down. You had an opportunity to testify if you wanted to. You told your lawyer you did not want to testify. I asked you in court and you said on the record you did not want to testify. That ship has sailed.
>
> THE DEFENDANT: Sorry, your Honor.
>
> THE COURT: Don't say anything else.

(Trial Tr. 601-02.)

The parties proceeded with their summations, and, at the conclusion of the trial, the jury convicted Petitioner on all three counts: Robbery in the First Degree, a class B violent felony, in violation of New York Penal Law (hereinafter, "Penal Law") § 160.15(3), Burglary in the Second Degree, a class C violent felony, in violation of Penal Law § 140.25(1)(c), and Burglary in the Third Degree, a class D felony, in violation of Penal Law § 140.20.  (Trial Tr. 763-64.)

After the conviction, but prior to sentencing, Petitioner moved the trial court pursuant to C.P.L. § 330.30 to vacate the verdict, arguing that both the defense counsel and the trial court misinterpreted the law which resulted in the denial to Petitioner of his right to testify at trial. (DE 9-9, ECF pp. 1-16.)  The trial court denied the motion finding that Petitioner "did not request to testify and was denied that right, but merely wanted to place on the record that the

People had suborned perjury by calling a witness who they knew testified falsely when she testified that she saw [Petitioner] on a bicycle on the day of the incident."  (DE 9-9, ECF p. 34.)

At the subsequent sentencing hearing, Petitioner insisted on relieving his defense counsel and appeared *pro se*.  (Sent'g Tr. 10-14, DE 9-11.)  The court sentenced Petitioner as a persistent felony offender[4] to an indeterminate term of 20 years to life of incarceration.  (Sent'g Tr. 75.)

Petitioner pursued an appeal; the Appellate Division, Second Department rejected Petitioner's claim of a denial of the right to testify, and declined to consider the claims of ineffective assistance of trial counsel, finding that the allegations relied on the facts outside the record and thus subject to a motion pursuant to C.P.L. § 440.10.[5]  *See People v. Stallone*, 204 A.D.3d 841, 842, 166 N.Y.3d 271, 274 (2022), *leave to appeal denied*, 39 N.Y.3d 942, 193 N.E.3d 531 (2022).[6]

Petitioner collaterally attacked the judgment of conviction by filing seven motions pursuant to C.P.L. § 440.10.[7]  The court denied the first six motions, holding that the claims

---

[4] Before proceeding to sentencing, the court advised Petitioner that there will be a persistent felony offender hearing and repeatedly implored him to reconsider relieving his counsel. (Sent'g Tr. 18, DE 9-11.) The People's application, supported by the evidence presented at the hearing, was to adjudicate Petitioner as persistent violent felony offender. (Sent'g Tr. 33). Petitioner objected to all evidence presented by the People by raising purported issues with his conviction without challenging the facts or incarceration terms of the previous convictions that the People presented to the court. (Sent'g Tr. 58-59.) The court found that the People met their burden and adjudicated Petitioner a persistent felony offender. (Sent'g Tr. 60.) However, as the Appellate Division noted in considering Petitioner's direct appeal, the uniform sentence and commitment sheet stated that Petitioner was sentenced as a persistent violent felony offender. *See People v. Stallone*, 204 A.D.3d 841, 843, 166 N.Y.3d 271, 275 (2022), *leave to appeal denied*, 39 N.Y.3d 942, 193 N.E.3d 531 (2022). Nevertheless, the Appellate Division discerned no prejudice to Petitioner and ordered the trial court to issue an "amended uniform sentence and commitment sheet," which would reflect Petitioner's sentence as a persistent felony offender as he was adjudicated at sentencing. *See id.*

[5] The Appellate Division noted that Petitioner already made a C.P.L. § 440.10 motion alleging ineffective assistance of counsel, which was denied as was his leave to appeal it, and as such, the ineffective assistance claims were still not properly before the Appellate Division. *See People v. Stallone*, 204 A.D.3d at 842.

[6] The Appellate Division also denied Petitioner's claims that the prosecutor's summation had unfairly prejudiced him and that the defense counsel had not been provided with a meaningful notice of the content of the jury notes. *See Stallone,* 204 A.D. at 842-43. At the same time, the Appellate Division vacated Petitioner's conviction of the third-degree burglary as a lesser included offense of the burglary in the second degree. *See id.*

[7] The motion papers and the state court decisions on the first six C.P.L. § 440.10 motions can be found on PACER as part of the state court record filed by Respondent. (DE 9-1 [First Mot., pt. 1], 9-2 [First Mot., pt. 2], 9-3 [First Mot., pt. 3], 9-4 [Second Mot.], 9-5 [Third Mot.], 9-6 [Fourth Mot.], 9-7 [Fifth Mot.], 9-8 [Sixth Mot.].) Petitioner filed a copy of his seventh motion, pending before the state court, with this Court on August 22, 2024. (DE 14 [Seventh Mot.].)

were without merit, untimely, procedurally barred, and/or improperly raised on collateral review. Petitioner raised multiple claims on these motions, but only following are directly relevant to the present petition: denial of the constitutional right to testify at trial and alleged ineffective assistance by subsequently disbarred trial counsel.[8]

After the court denied his six C.P.L. § 440.10 motions and the Appellate Division denied his direct appeal, Petitioner filed the present Petition.  (DE 1.)  After the case was fully briefed by both parties, Petitioner mailed a copy of his seventh C.P.L. § 440.10 motion to the Court and requested that the pending "motion be made a part of the pending habeas corpus petition."  (DE 14, ECF p. 1.)  The claims contained in the seventh C.P.L. § 440.10 motion do not relate back to the claims raised in the Petition and are not exhausted, therefore, the Court declines to consider these untimely claims on the present Petition.[9]

### Discussion

#### Standard of Review

This petition is reviewed under the well-established standard of review of habeas corpus petitions, including the authority of this Court to review such matters, the application of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the exhaustion doctrine, the independent and adequate procedural bar, the cause and prejudice exception, AEDPA deference, the evaluation of claims of ineffective assistance of counsel, and the liberal construction afforded

---

[8] In his first C.P.L. § 440.10 motion, Petitioner claimed that he was denied his constitutional right to testify at trial and that his counsel was ineffective for failing to make this argument at the time of trial.  (First Mot., DE 9-1, ECF p. 3.) The court denied the motion, finding that Petitioner was not denied his right to testify as he never invoked it in the court's presence, and that, furthermore, the defense counsel was not ineffective with regards to this matter because, among other reasons, Petitioner's proposed testimony would not have been admissible in any event. (First Mot., DE 9-1, ECF pp. 69-70.)  Later, Petitioner argued that his counsel's disbarment was due to Petitioner's complaint to the attorney grievance committee, supporting his claim that the counsel was ineffective in his representation of Petitioner. (Sixth Mot., DE 9-8, ECF pp. 5-11.)  The court acknowledged that the counsel has been disbarred on July 28, 2021, but rejected Petitioner's claim, noting that the counsel was disbarred because of the conduct unrelated to his representation of Petitioner.  (Sixth Mot., DE 9-8, ECF p. 44.)
[9] The Court is not aware of any resolution of this motion in state court.

to filings by *pro se* petitioners, as more fully discussed in *Licausi v. Griffin*, 460 F. Supp. 3d 242, 255–60 (E.D.N.Y. 2020), *appeal dismissed*, No. 20-1920, 2020 WL 7488607 (2d Cir. Nov. 17, 2020).  The discussion of these principles set forth in *Licausi* is incorporated herein by reference.

*The Instant Petition*

As noted, Petitioner seeks habeas relief on the following grounds: prosecutorial misconduct in the grand jury proceedings, ineffective assistance of the subsequently disbarred defense counsel, purported denial of his right to testify at trial, and alleged *Batson* violations and systemic racism during jury selection.  (DE 1, ECF pp. 3-4.)  Even according the petition the solicitous treatment afforded to *pro se* pleadings, none of the grounds support habeas relief.

Petitioner's unexhausted claim of the alleged prosecutorial misconduct during the grand jury proceedings is rooted in the state law rights and is not cognizable on the habeas petition.[10]

To the extent that Petitioner's factually-based claims were fully considered by the state court, *see People v. Stallone*, 204 A.D.3d 841, 166 N.Y.S.3d 272 (2022), such determinations must be given deference by this Court under the AEDPA.  First, Petitioner's claim of ineffective assistance of his defense counsel based on that counsel's subsequent disbarment because of the unrelated allegations of financial misconduct does not warrant relief as the state court's denial of this claim on Petitioner's sixth C.P.L. § 440.10 motion was neither contrary to nor an unreasonable application of clearly established federal law.[11]  Next, the Court finds no error in

---

[10] It is well settled that the claims challenging grand jury proceedings are not cognizable on federal habeas review. *See Davis v. Mantello,* 42 F. App'x 488, 490 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court.").  In New York, a grand jury indictment arises from the "State Constitution and other state laws . . . and federal habeas relief may not be granted for violations of state law." *Robinson v. LaClair,* No. 09-CV-3501, 2011 WL 115490, at *8 (E.D.N.Y. Jan. 13, 2011).  And "even if a defective state indictment constituted proper grounds for federal habeas review, any injury that petitioner claims from the defective indictment was cured by the jury's verdict of guilt beyond a reasonable doubt at his trial." *Id.*

[11] "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." *Harrington v. Richter*, 562 U.S. 86, 110, 131 S. Ct. 770, 791, 178 L. Ed. 2d 624 (2011).  Under *Strickland v. Washington*, to successfully claim ineffective assistance of counsel, a petitioner must demonstrate both that his counsel provided deficient representation and that this deficiency caused

the Appellate Division's determination concerning the purported denial of Petitioner's right to

testify at trial.    The state court record shows that Petitioner requested to make a statement about

prosecutor's misconduct and witness' alleged perjury.[12]    The defense counsel read the statement

to the trial court and Petitioner later reiterated the argument himself. However, Petitioner made

no on-the-record request to testify, repeating instead his claim that the prosecutor "suborned

perjury" from the medical assistant.  (Trial Tr. 598-602.)  Whether the Court considers

Petitioner's argument as a standalone claim or within the ineffective assistance of counsel

framework, Petitioner fails to demonstrate that the state court's determination was made contrary

to, or as an unreasonable application of, clearly established federal law. [13]

---

[12] prejudice to the petitioner.  466 U.S. 668, 687 (1984).  Counsel's disbarment "not grounded in any way on events relating to the representation of [Petitioner]" does not warrant an automatic finding of ineffectiveness.  *United States v. Mak*, No. 83 CR. 742, 1988 WL 125677, at *11 (S.D.N.Y. Nov. 15, 1988), *aff'd*, 875 F. 2d 857 (2d Cir. 1989), *cert. denied*, 493 U.S. 857(1989); *see Cordero v. Miller*, No. 15-CV-00383, 2018 WL 3342573, at *3 (W.D.N.Y. July 9, 2018) (finding that the trial counsel's subsequent disbarment does not support "a colorable claim that [defense counsel's] performance years earlier was constitutionally deficient.").  Here, Petitioner argued on his sixth C.P.L. § 440.10 motion that his trial counsel's disbarment, which occurred upon the conclusion of the trial, constituted proof of the counsel's ineffective assistance.  (Sixth Mot., DE 9-8, ECF pp. 5-11.)  The state court acknowledged that the counsel has been disbarred on July 28, 2021, but rejected Petitioner's claim of ineffective assistance, noting that the counsel was disbarred "for misconduct in an unrelated case where it was alleged he misappropriated funds entrusted to him as an attorney, commingled those funds with own personal funds, and failed to maintain required banking and bookkeeping records from his attorney trust account."  (Sixth Mot., DE 9-8, ECF p. 44.)  The Appellate Division denied leave to appeal the court's decision.  (Sixth Mot., DE 9-8, ECF p. 69.)  Petitioner's present habeas claim of ineffective assistance, vague, conclusory and identical to his C.P.L. § 440.10 claim, fails to satisfy either prong of *Strickland*.

[12] Notably, Petitioner made his unequivocal waiver of the right testify, documented on the record, (Trial Tr. 541), after the medical assistant had already testified during the People's case-in-chief.  (Trial Tr. 387-88.)  Petitioner's vague assertions, after all proof was closed, that he wanted the jury to know about the alleged perjury and prosecutorial misconduct were not an unequivocal invocation of the right to testify but rather appear to have been an attempt to impeach the medical assistant's credibility on a collateral matter.

[13] "While the Supreme Court has recognized a constitutional right to testify on one's behalf at a criminal trial, that right is not without limitation."  *Franco v. Costello*, 322 F.Supp.2d 474, 478 (S.D.N.Y. 2004); *see Rock v. Arkansas*, 483 U.S. 44 (1987).  Here, both the trial court and the Appellate Division rejected Petitioner's claim and found that Petitioner did not invoke his right to testify but rather insisted on making an impeachment argument to the court. Such factual determination must be taken as true absent clear and convincing evidence to otherwise.  See 28 U.S.C. § 2254(e)(1).  Here, Petitioner effectively reiterated the same argument that he wanted the jury to hear from him on the collateral matter about riding a bicycle on November 16, 2016.  This does not present clear and convincing evidence that the state courts erred in their factual determination.  Furthermore, the Second Circuit clarified that there is "no general obligation on the trial court to inform a defendant of the right to testify [at any trial stage] and ascertain whether the defendant wishes to waive that right."  *Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir. 1997), *cert. denied*, 522 U.S. 1128 (1998).  Rather, "this burden is a component of ineffective assistance of counsel."  *Id.*  Even if the Court were to consider Petitioner's argument within the ineffective assistance of counsel framework, it fails. The state court denied the same claim on the merits in Petitioner's first C.P.L. § 440.10 motion, (First Mot., DE 9-1, ECF pp. 69-70), and the

Finally, Petitioner cannot proceed on claims that are were not fully exhausted and hence subject to the procedural bar, as Petitioner has failed to demonstrate (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). As such, Petitioner's unexhausted claim of the alleged *Batson* violations and systemic racism during jury selection is procedurally barred and, based on the state court record before the Court, patently without any merit.[14]

Thus, the petition is denied in its entirety.

### Conclusion

Because the Court has considered all of Petitioner's arguments and found them meritless, the petition is DENIED. A certificate of appealability shall not issue because Petitioner has not made a substantial showing that he was denied any constitutional rights. *See* 28 U.S.C. § 2253(c)(2). I certify that any appeal of this Order as to those issues would not be taken in good faith, and thus *in forma pauperis* status is denied for the purposes of any appeal on those grounds. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

---

court's holding that Petitioner was not denied meaningful representation with respect to his alleged invocation of the right to testify was neither contrary to nor an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). Given the overwhelming evidence against Petitioner presented by other witnesses, he fails to establish that the outcome of the trial would have been different had he testified and attempted to impeach the medical assistant about her seeing him riding the bicycle on November 16, 2016. *See Heron v. Griffin*, No. 18-CV-00004, 2019 WL 1050011, at *11 (E.D.N.Y. Mar. 5, 2019) ("[H]ad petitioner testified, it is highly unlikely that the jury would have credited his testimony given the overwhelming evidence [against him].").

[14] "AEDPA provides that '[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.'" *Pratt v. Greiner*, 306 F.3d 1190, 1197 (2d Cir. 2002) (quoting 28 U.S.C. § 2254 (b)(2)). Here, while Petitioner brings the standalone claim of the alleged *Batson* violations and systemic racism in jury selection for the first time on the present petition, he had previously attempted to argue, in his third and sixth C.P.L. §440.10 motions and on direct appeal, that his counsel was ineffective in failing to raise *Batson* challenges. The Appellate Division declined to consider Petitioner's ineffective assistance claim on direct appeal as it relied on the facts outside the record, and the trial court denied Petitioner's identical claim as untimely and procedurally barred as nothing precluded Petitioner from making the claim in his first C.P.L. § 440.10 motion. (Third Mot., DE 9-5, ECF pp. 31-32; Sixth Mot., DE 9-8, ECF pp. 43-44.) As the state court record is devoid of any support for this claim beyond Petitioner's own conclusory statements, both his ineffective assistance and his standalone claims based on the alleged *Batson* violations and systemic racism are meritless.

The Clerk of the Court is respectfully directed to mail a copy of this Order to Petitioner and to close the case.

**SO ORDERED.**

Dated:  December 12, 2024
        Central Islip, New York

/s/Gary R. Brown_____
HON. GARY R. BROWN
UNITED STATES DISTRICT JUDGE